**FORM 1.997.    CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

## I.    CASE STYLE

IN THE CIRCUIT/COUNTY COURT OF THE <u>THIRTEENTH</u>  JUDICIAL CIRCUIT,
IN AND FOR <u>HILLSBOROUGH</u>  COUNTY, FLORIDA

<u>Colin Carlsen</u>
Plaintiff

Case # _____
Judge _____

vs.

<u>Florida Health Sciences Center, Inc.</u>
Defendant

## II.    AMOUNT OF CLAIM

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐ $8,000 or less
☐ $8,001 - $30,000
☐ $30,001- $50,000
☐ $50,001- $75,000
☐ $75,001 - $100,000
☒ over $100,000.00

## III.    TYPE OF CASE    (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

EXHIBIT B

**CIRCUIT CIVIL**

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
       ☐ Business governance
       ☐ Business torts
       ☐ Environmental/Toxic tort
       ☐ Third party indemnification
       ☐ Construction defect
       ☐ Mass tort
       ☐ Negligent security
       ☐ Nursing home negligence
       ☐ Premises liability—commercial
       ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
       ☐ Commercial foreclosure
       ☐ Homestead residential foreclosure
       ☐ Non-homestead residential foreclosure
       ☐ Other real property actions

☐ Professional malpractice
       ☐ Malpractice—business
       ☐ Malpractice—medical
       ☐ Malpractice—other professional
☒ Other
       ☐ Antitrust/Trade regulation
       ☐ Business transactions
       ☐ Constitutional challenge—statute or ordinance
       ☐ Constitutional challenge—proposed amendment
       ☐ Corporate trusts
       ☐ Discrimination—employment or other
       ☐ Insurance claims
       ☐ Intellectual property
       ☐ Libel/Slander
       ☐ Shareholder derivative action
       ☐ Securities litigation
       ☐ Trade secrets
       ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

☐ Replevins
☐ Evictions
  ☐ Residential Evictions
  ☐ Non-residential Evictions
☐ Other civil (non-monetary)

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

**IV. REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☒ Nonmonetary declaratory or injunctive relief;
☐ Punitive

**V. NUMBER OF CAUSES OF ACTION:** [   ]
(Specify)

 <u>1</u>

**VI. IS THIS CASE A CLASS ACTION LAWSUIT?**
  ☒ yes
  ☐ no

**VII. HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
  ☒ no
  ☐ yes If "yes," list all related cases by name, case number, and court.

**VIII. IS JURY TRIAL DEMANDED IN COMPLAINT?**
  ☒ yes
  ☐ no

**IX. DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
  ☐ yes
  ☒ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: <u>s/ Christopher Reid Reilly</u>    Fla. Bar # <u>1025097</u>
    Attorney or party       (Bar # if attorney)

<u>Christopher Reid Reilly   </u>    <u>01/27/2023</u>
 (type or print name)       Date

- 3 -

Christopher R. Reilly (FBN: 1025097)
**BURSOR & FISHER, P.A.**
701 Brickell Avenue, Suite 1420
Miami, FL 33133
Telephone: (305) 330-5512
Facsimile: (305) 679-9006
Email: creilly@bursor.com

Joshua D. Arisohn*
Philip L. Fraietta*
**BURSOR & FISHER, P.A.**
888 Seventh Avenue
New York, NY 10019
Tel: (646) 837-7150
jarisohn@bursor.com
pfraietta@bursor.com

Scott R. Drury*
**DRURY LEGAL, LLC**
6 Carriage Lane
Highwood, Illinois 60040
Telephone: (312) 358-8225
scott@drurylegal.com

*Attorneys for Plaintiff and the Class*

### IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
### IN AND FOR HILLSBOROUGH COUNTY, FLORIDA

| | |
|---|---|
| COLIN CARLSEN, for himself and others similarly situated,<br><br>        *Plaintiff*,<br><br>v.<br><br>FLORIDA HEALTH SCIENCES CENTER, INC., doing business as TAMPA GENERAL HOSPITAL,<br><br>        *Defendant*. | CIVIL DIVISION<br><br>Case No. _____<br><br>**JURY TRIAL DEMANDED** |

### **COMPLAINT**

Plaintiff Colin Carlsen ("Plaintiff"), on behalf of himself and all other similarly situated individuals (the "Class Members"), against Defendant Florida Health Sciences Center, Inc., doing business as Tampa General Hospital ("Defendant" or "Tampa General"), brings this action based upon personal knowledge of the facts pertaining to himself, and on information and belief as to all other matters, by and through the investigation of undersigned counsel.

1

## NATURE OF THE ACTION

1.      This is a class action lawsuit brought on behalf of all Florida residents who have accessed and used the following website that Defendant owns and operates: www.tgh.org (the "Website").

2.      At relevant times, Defendant aided employed, agreed and conspired with Facebook/Meta[1] to intercept communications sent and received by Plaintiff and Class Members, including communications containing protected medical information.  Plaintiff brings this action for legal and equitable remedies resulting from these illegal actions.

## JURISDICTION AND VENUE

3.      The Court has subject matter jurisdiction over this action seeking declaratory relief, injunctive relief and damages in excess of $30,000 (exclusive of court costs, attorneys' fees and interest) pursuant to Article V, section 5(b) of the Florida Constitution and Florida Statutes §§ 26.012 and 86.011.

4.      The Court has personal jurisdiction over Defendant because it is headquartered in Tampa, Florida, and it regularly conducts business in Hillsborough County, Florida.

5.      Venue is proper pursuant to Florida Statutes § 47.011, *et seq.*, because Defendant's principal place of business is located in Hillsborough County, Florida.

## THE PARTIES

*Plaintiff*

6.      Plaintiff Colin Carlen is an adult citizen of Florida and is domiciled in The Villages, Florida.

---

[1] In October 2021, Facebook, Inc. changed its name to Meta, Inc.  Unless otherwise indicated, Facebook, Inc. and Meta, Inc. are referenced collectively herein as "Facebook."

7.      At relevant times, Plaintiff has used the Website to book medical appointments and review results using the Tampa General patient portal.  Plaintiff first used the Website for the above-stated purposes in approximately 2021.  Plaintiff accessed the Website using his smartphone and a desktop computer.   As described below, when Plaintiff used the Website to book appointments, he disclosed medical information regarding his medical condition, history or treatment.

8.      Plaintiff also has an active Facebook account which he has maintained since 2009. Plaintiff accesses his Facebook account from a smartphone, tablet, laptop, and desktop.

***Defendant***

9.      Defendant Florida Health Sciences Center, Inc. is a private not-for-profit hospital that does business as Tampa General Hospital.  Defendant's principal place of business is in Florida.  Defendant employs over 8,000 individuals.  Defendant's 2021 reported revenues were approximately $1.841 billion.   Defendant offers a full range of medical services, including inpatient, outpatient and emergency care, and treats hundreds of thousands of patients each year.

10.      Pursuant to the systematic process described herein, Defendant assisted Facebook with intercepting Plaintiff's communications, including those that contained personally identifiable information, protected health information and related confidential information. Defendant assisted these interceptions without Plaintiff's knowledge, consent or express written authorization.

11.      By failing to receive the requisite consent, Defendant breached confidentiality and unlawfully disclosed Plaintiff's personally identifiable information and protected health information.

3

## FACTUAL ALLEGATIONS

***Florida's Security of Communications Act***

12.     Where there is a reasonable expectation of privacy, absent the consent of all parties, the Florida Security of Communications Act (the "FSCA") prohibits, among other things the intentional interception or procurement of another person to intercept any wire, oral or electronic communication.  Fla. Stat. §§ 934.03(1), 934.03(2)(d).

13.     Any person who intercepts, discloses or uses or procures any other person to intercept, disclose or use, a wire, electronic or oral communication in violation of the FSCA is subject to a civil action for, among other things: (a) actual damages, not less than liquidated damages computed at the rate of $100/day for each violation or $1,000, whichever is higher; (b) punitive damages; and (c) reasonable attorneys' fees and other litigation costs reasonably incurred. Fla. Stat. § 934.10.

14.     Under the FSCA, "intercept" is defined as the "[a]ural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device."  Fla. Stat. § 934.02(3).

15.     Under the FSCA, "contents" in the context of "any wire, oral, or electronic communication, includes any information concerning the substance, purport, or meaning of that communication."  Fla. Stat. § 934.02(7).

16.     Under the FSCA, "person" is defined as, *inter alia*, "any individual, partnership, association, joint stock company, trust, or corporation."  Fla. Stat. § 934.02(5).

17.     With some exclusions that do not impact Plaintiff's claims, under the FSCA, "electronic communication" is defined as "[a]ny transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic,

photoelectronic, or photo-optical system that affects intrastate, interstate, or foreign commerce . . . ." Fla. Stat. 934.02(12).

### Defendant Tampa General

18.    Defendant Tampa General has over eighty locations across Florida that provides treatment in a broad range of areas. Defendant has 1,041 hospital beds and in 2022 had over 650,000 outpatient visits and over 56,000 inpatient discharges.

19.    Defendant owns and operates the Website, which is accessible on mobile devices and desktop computers.

### Facebook's Platform and Business Tools

20.    Facebook describes itself as a "real identity platform,"[2] meaning users are allowed only one account and must share "the name they go by in everyday life."[3]  To that end, when creating an account, users must provide their first and last name, along with their birthday and gender.[4]

21.    In 2021, Facebook generated $117 billion in revenue.[5]  Roughly 97% of that came from selling advertising space.[6]

22.    Facebook sells advertising space by highlighting its ability to target users.[7]

---

[2] Sam Schechner and Jeff Horwitz, *How Many Users Does Facebook Have? The Company Struggles to Figure It Out*, WALL. ST. J. (Oct. 21, 2021).
[3] FACEBOOK, COMMUNITY STANDARDS, PART IV INTEGRITY AND AUTHENTICITY, https://www.facebook.com/communitystandards/integrity_authenticity.
[4] FACEBOOK, SIGN UP, https://www.facebook.com/.
[5] FACEBOOK, META REPORTS FOURTH QUARTER AND FULL YEAR 2021 RESULTS, https://investor.fb.com/investor-news/press-release-details/2022/Meta-Reports-Fourth-Quarter-and-Full-Year-2021-Results/default.aspx.
[6] *Id.*
[7] FACEBOOK, WHY ADVERTISE ON FACEBOOK, https://www.facebook.com/business/help/205029060038706.

Facebook can target users so effectively because it surveils user activity both on and off its site.[8] This allows Facebook to make inferences about users beyond what they explicitly disclose, like their "interests," "behavior," and "connections."[9]   Facebook compiles this information into a generalized dataset called "Core Audiences," which advertisers use to apply highly specific filters and parameters for their targeted advertisements.[10]

      23.    Advertisers can also build "Custom Audiences."[11]   Custom Audiences enables advertisers to reach "people who have already shown interest in [their] business, whether they're loyal customers or people who have used [their] app or visited [their] website."[12]   With Custom Audiences, advertisers can target existing customers directly, and they can also build "Lookalike Audiences," which "leverage[] information such as demographics, interests, and behavior from your source audience to find new people who share similar qualities."[13]   Unlike Core Audiences, advertisers can build Custom Audiences and Lookalike Audiences only if they first supply Facebook with the underlying data.   Advertisers can do so through two mechanisms: (a) by manually uploading contact information for customers; or (b) by utilizing Facebook's "Business Tools."[14]

---

[8] FACEBOOK, ABOUT FACEBOOK PIXEL,
https://www.facebook.com/business/help/742478679120153?id=1205376682832142.

[9] FACEBOOK, AD TARGETING: HELP YOUR ADS FIND THE PEOPLE WHO WILL LOVE YOUR BUSINESS,
https://www.facebook.com/business/ads/ad-targeting.

[10] FACEBOOK, EASIER, MORE EFFECTIVE WAYS TO REACH THE RIGHT PEOPLE ON FACEBOOK,
https://www.facebook.com/business/news/Core-Audiences.

[11] FACEBOOK, ABOUT CUSTOM AUDIENCES,
https://www.facebook.com/business/help/744354708981227?id=2469097953376494.

[12] FACEBOOK, AD TARGETING, HELP YOUR ADS FIND THE PEOPLE WHO WILL LOVE YOUR BUSINESS, https://www.facebook.com/business/ads/ad-targeting.

[13] FACEBOOK, ABOUT LOOKALIKE AUDIENCES,
https://www.facebook.com/business/help/164749007013531?id=401668390442328.

[14] FACEBOOK, CREATE A CUSTOMER LIST CUSTOM AUDIENCE,
https://www.facebook.com/business/help/170456843145568?id=2469097953376494;

24.     As Facebook puts it, the Business Tools "help website owners and publishers, app developers and business partners, including advertisers and others, integrate with Facebook, understand and measure their products and services, and better reach and serve people who might be interested in their products and services."[15]  Put more succinctly, Facebook's Business Tools are bits of code that advertisers can integrate into their websites, mobile applications and servers, thereby enabling Facebook to intercept and collect user activity on those platforms.

25.     The Business Tools are automatically configured to capture certain data, like when a user visits a webpage, the webpage's Universal Resource Locator ("URL") and metadata, or when a user downloads a mobile application or makes a purchase.[16]  Facebook's Business Tools can also track other events.  Facebook offers a menu of "standard events" from which advertisers can choose, including what content a visitor views or purchases.[17]  Advertisers can even create their own tracking parameters by building a "custom event."[18]

26.     One such Business Tool is the Facebook Tracking Pixel.  Facebook offers this piece of code to advertisers, like Defendant, to integrate into their websites.  As the name implies, the

---

FACEBOOK, CREATE A WEBSITE CUSTOM AUDIENCE,
https://www.facebook.com/business/help/1474662202748341?id=2469097953376494.

[15] FACEBOOK, THE FACEBOOK BUSINESS TOOLS,
https://www.facebook.com/help/331509497253087.

[16] *See* FACEBOOK, FACEBOOK PIXEL, ACCURATE EVENT TRACKING, ADVANCED,
https://developers.facebook.com/docs/facebook-pixel/advanced/; *see also* FACEBOOK, BEST
PRACTICES FOR FACEBOOK PIXEL SETUP,
https://www.facebook.com/business/help/218844828315224?id=1205376682832142;
FACEBOOK, APP EVENTS API, https://developers.facebook.com/docs/marketing-api/app-event-api/.

[17] FACEBOOK, SPECIFICATIONS FOR FACEBOOK PIXEL STANDARD EVENTS,
https://www.facebook.com/business/help/402791146561655?id=1205376682832142.

[18] FACEBOOK, ABOUT STANDARD AND CUSTOM WEBSITE EVENTS,
https://www.facebook.com/business/help/964258670337005?id=1205376682832142; *see also*
FACEBOOK, APP EVENTS API, https://developers.facebook.com/docs/marketing-api/app-event-api/.

Facebook Tracking Pixel "tracks the people and type of actions they take."[19]  When a user accesses a website hosting the Facebook Tracking Pixel, Facebook's software script surreptitiously directs the user's browser to send a separate message to Facebook's servers.  This second, secret transmission contains the original GET request sent to the host website, along with additional data that the Facebook Tracking Pixel is configured to collect.  This transmission is initiated by Facebook code and concurrent with the communications with the host website.  Two sets of code are thus automatically run as part of the browser's attempt to load and read Defendant's Website— Defendant's own code and Facebook's embedded code.

27.     An example illustrates the point.  Take an individual who navigated to the Website and clicked on a tab for lung cancer.  When that tab was clicked, the individual's browser sent a GET request to Defendant's server requesting that server to load the particular webpage.  Because the Facebook Tracking Pixel was embedded in the Website, Facebook's embedded code, written in JavaScript, sent secret instructions back to the individual's browser, without alerting the individual that this was happening.  Facebook caused the browser to secretly and concurrently duplicate the communication with the Website, transmitting it to Facebook's servers, alongside additional information that transcribed the communication's content and the individual's identity.

28.     After collecting and intercepting the information described in the preceding paragraph, Facebook processed it, analyzed it and assimilated it into datasets like Core Audiences and Custom Audiences.

---

[19] FACEBOOK, RETARGETING, https://www.facebook.com/business/goals/retargeting.

*How Defendant Disclosed Plaintiff's and Class Members' Protected Health Information and Assists with Intercepting Communications*

29.     Through the Facebook Tracking Pixel, Defendant shared its patients' identities and online activity, including information and search results related to their private medical treatment.

30.     An investigation by *The Markup* (the "Markup Investigation") revealed that thirty-three of the top 100 hospitals in the United States, as ranked by *Newsweek*, had the Facebook Tracking Pixel embedded on the appointment schedule pages of their websites, among other possible places.[20]  Tampa General is one of the identified websites.[21]

31.     According to the Markup Investigation, the hospital websites were "collecting patients' sensitive health information – including details about their medical conditions, prescriptions, and doctor's appointments – and sending it to Facebook."[22]

32.     The Markup Investigation further revealed that the data sent to Facebook was connected to: (a) the IP address of the computer sending the information, providing Facebook with the ability to connect the sensitive information to a specific individual or household; or, worse: (b) a specific Facebook user if the user was logged into their Facebook account when using the Website.[23]

33.     The Markup Investigation provided the following examples of the types of information surreptitiously intercepted by Facebook: (a) "clicking the 'Schedule Online' button on a doctor's page [of a specified hospital] prompted the [Facebook Tracking Pixel] to send

---

[20] Todd Feathers, *et al.*, FACEBOOK IS RECEIVING SENSITIVE MEDICAL INFORMATION FROM HOSPITAL WEBSITES, THE MARKUP ("Markup Investigation") (June 16, 2022), https://themarkup.org/pixel-hunt/2022/06/16/facebook-is-receiving-sensitive-medical-information-from-hospital-websites.
[21] *Id.*
[22] *Id.*
[23] *Id.*

9

Facebook the text of the button, the doctor's name, and the search term we used to find her: 'pregnancy termination'"; and (b) clicking the "Schedule Online Now' button on a different website "prompted the [Facebook Tracking Pixel] to send Facebook the text of the button, the doctor's name, and the condition we selected from the dropdown menu: "Alzheimer's."[24]

34.     The startling information revealed in the Markup Investigation prompted a former senior privacy advisor for the U.S. Department of Health and Human Services' Office for Civil Rights ("Office for Civil Rights") to remark on the troubling nature of the conduct: "I am deeply troubled by what [the hospitals] are doing with the capture of [patients'] data and the sharing of it."[25]

***How Defendant Disclosed Protected Health Information***

35.     Via the Website, Defendant allows patients to select options like "Find a Doctor," "Find a Location" and "Schedule Now."[26]



---

[24] *Id.*
[25] *Id.*
[26] https://www.tgh.org/.

36.     When patients click "Find a Doctor," they can search by "specialty practice, or provider name."[27]



37.     When patients click "Schedule Now," they can schedule an appointment via the Website.[28]



---

[27] https://www.tgh.org/find-doctor.
[28] https://www.tgh.org/schedule.

38.     Upon information and belief, at relevant times, whenever patients searched their treatment or condition, or whenever patients scheduled an appointment, Defendant procured Facebook to intercept communications that contain protected health information.

39.     Each time Defendant sent this content, it also disclosed a patient's personally identifiable information, including their Facebook ID ("FID").  An FID is a unique and persistent identifier that Facebook assigns to each user.  With it, any ordinary person can look up the user's Facebook profile and name.  Notably, while Facebook can easily identify any individual on its own Facebook platform with only their unique FID, so too can any ordinary person who comes into possession of an FID.  Facebook admits as much on its website.  Indeed, to find a corresponding profile, a person need only attach the FID to the end of the URL for Facebook, typing in Facebook.com/[FID].

40.     A user who accessed Defendant's Website while logged into Facebook transmitted what is known as the "c_user cookie" to Facebook, which contained that user's unencrypted Facebook ID.

41.     When a visitor's browser had recently logged out of an account, Facebook compelled the visitor's browser to send a smaller set of cookies.

42.     One such cookie was the "fr cookie" which contained, at least, an unencrypted Facebook ID and browser identifier.  Facebook, at a minimum, used the fr cookie to identify users.[29]

43.     If a visitor never created an account, a smaller set of cookies was transmitted.

---

[29] FACEBOOK, COOKIES & OTHER STORAGE TECHNOLOGIES, https://www.facebook.com/policy/cookies/.

44.     At each stage, Defendant also utilized the "_fbp cookie," which attached to a browser as a first-party cookie, and which Facebook used to identify a browser and a user. [30]

45.     The fr cookie expired after 90 days unless the visitor's browser logged back into Facebook. [31]   If that happened, the time reset, and another 90 days began to accrue. [32]

46.     The _fbp cookie expired after 90 days unless the visitor's browser accessed the same website. [33]   If that happened, the time reset, and another 90 days began to accrue. [34]

47.     The Facebook Tracking Pixel uses both first- and third-party cookies.  A first-party cookie is "created by the website the user is visiting"—e.g., the Website. [35]  A third-party cookie is "created by a website with a domain name other than the one the user is currently visiting"—e.g., Facebook. [36]  The _fbp cookie was and is always transmitted as a first-party cookie.  A duplicate _fbp cookie was and is sometimes sent as a third-party cookie, depending on whether the browser has recently logged into Facebook.

48.     At relevant times, Facebook, at a minimum, used the fr, _fbp, and c_user cookies to link to Facebook IDs and corresponding Facebook profiles.  Defendant sent those identifiers alongside the event data.

49.     Plaintiff never consented, agreed or otherwise permitted Defendant to disclose his

---

[30] FACEBOOK, COOKIES & OTHER STORAGE TECHNOLOGIES, https://www.facebook.com/policy/cookies/.
[31] See FACEBOOK, COOKIES & OTHER STORAGE TECHNOLOGIES, https://www.facebook.com/policy/cookies/.
[32] Confirmable through developer tools.
[33] See FACEBOOK, COOKIES & OTHER STORAGE TECHNOLOGIES, https://www.facebook.com/policy/cookies/.
[34] Also confirmable through developer tools.
[35] PC MAG, FIRST-PARTY COOKIES, https://www.pcmag.com/encyclopedia/term/first-party-cookie.  This is confirmable by using developer tools to inspect a website's cookies and track network activity.
[36] PC MAG, THIRD-PARTY COOKIES, https://www.pcmag.com/encyclopedia/term/third-party-cookie.  This is also confirmable by tracking network activity.

personally identifiable information and protected health information. Plaintiff was never provided with any written notice that Defendant disclosed its users' protected health information, nor was Plaintiff provided any means of opting out of such disclosures. Defendant nonetheless knowingly disclosed Plaintiff's protected health information to Facebook.

50. By law, Plaintiff is entitled to privacy in his protected health information and confidential communications. Defendant deprived Plaintiff of his privacy rights by procuring Facebook to intercept these communications by implementing a system that surreptitiously tracked, recorded and disclosed Plaintiff's and other patients' confidential communications, personally identifiable information and protected health information. Plaintiff did not discover that Defendant disclosed his personally identifiable information and protected health information to Facebook, and assisted Facebook with intercepting Plaintiff's communications with Defendant, until January 2023.

### *The Expectation of Privacy in Healthcare Information*

51. An individual's medical records and information are among the most sensitive type of personal information.

52. The Health Insurance Portability and Accountability Act of 1996 ("HIPPA") imposes strict standards to protect sensitive patient health information from being disclosed without the patients' knowledge and consent. *See* 45 C.F.R. § 160, *et seq.*

53. On December 1, 2022, the Office for Civil Rights issued a bulletin titled *Use of Online Tracking Technologies by HIPPA Covered Entities and Business Associates* (the "Bulletin") in which it addressed the impropriety of healthcare providers utilizing tracking technologies such as the Facebook Tracking Pixel in a manner that impermissibly discloses

protected health information ("PHI") in violation of the HIPPA.[37]

54.    According to the Office for Civil Rights, "**[r]egulated entities** [those to which HIPPA applies] **are not permitted to use tracking technologies in a manner that would result in impermissible disclosures of [protected health information] to tracking technology vendors or any other violations of the HIPPA Rules."**[38]  As set forth in the Bulletin, "disclosures of PHI to tracking technology vendors for marketing purposes, without individuals' HIPPA-compliant authorizations, would constitute impermissible disclosures."[39]

55.    Outside of HIPPA, the Office for Civil Rights warned that an impermissible disclosure of an individual's PHI could result in a wide range of additional harms to the individual or others.[40]  "For example, an impermissible disclosure of PHI may result in identity theft, financial loss, discrimination, stigma, mental anguish, or other serious negative consequences to the reputation, health, or physical safety of the individual or others identified in the individual's PHI."[41]

56.    The Office for Civil Rights noted the broad range of information that constitutes PHI, including "individually identifiable health information" ("IIHI") such as "an individual's medical record number, home or email address, or dates of appointments, as well as an individual's IP address or geographic location, medical device IDs, or any unique identifying code."[42] According to the Bulletin, IIHI can constitute PHI because:

---

[37] U.S. Dep't of Health and Human Services – Office for Civil Rights, Use of Online Tracking Technologies by HIPPA Covered Entities and Business Associates (Dec. 1, 2022), https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html.
[38] *Id.* (emphasis in original).
[39] *Id.*
[40] *Id.*
[41] *Id.*
[42] *Id.*

when a regulated entity collects the individual's IIHI through its website or mobile app, the information connects the individual to the regulated entity (*i.e.*, it is indicative that the individual has received or will receive health care services or benefits from the covered entity), and thus relates to the individual's past, present, or future health or health care or payment for care.[43]

57. The Office for Civil Rights concluded that "it is critical for regulated entities to ensure that they disclose PHI **only** as expressly permitted or required by the HIPPA Privacy Rule."[44]

58. As a result of Defendant's conduct, as alleged herein, Plaintiff and Class Members have been exposed to the harms and impending harms described in the Bulletin.

59. Moreover, "courts have recognized the 'growing trend across courts . . . to recognize the lost property value' of personal information. *In re Marriott Int'l, Inc., Cust. Data Sec. Breach Litig.*, 440 F.Supp.3d 447, 461 (D. Md. 2020) . . .; *see also In re Facebook Privacy Litigation*, 557 F.App'x. 494, 494 [sic] (9th Cir. 2014)." *Calhoun v. Google LLC*, 526 F.Supp.3d 605, 636 (N.D. Cal. 2021)."

## CLASS ACTION ALLEGATIONS

60. Pursuant to Florida Rule of Civil Procedure 1.220, Plaintiff brings this action individually and on behalf of the following Class: All natural persons in the State of Florida whose personal information was collected through the Facebook Tracking Pixel.

61. Plaintiff reserves the right to amend or modify the Class definition with greater specificity or division and/or to add subclasses after having had an opportunity to conduct discovery.

62. Excluded from the Class are: (a) Defendant; (b) any parent, affiliate or subsidiary

---

[43] *Id.*
[44] *Id.* (emphasis in original).

of Defendant; (c) any entity in which Defendant has a controlling interest; (d) any of Defendant's officers or directors; (e) any successor or assign of Defendant; (f) any judge or court personnel assigned to this case and members of their immediate families; and (g) Plaintiff's counsel and Defendant's counsel and anyone employed by them.

63.   **Numerosity.**   The Class is so numerous that joinder of all members is impracticable.  While Plaintiff does not know the exact number of members of the Class, Plaintiff believes the Class contains at least hundreds of thousands of individuals, and the members can be identified through Defendant's records.  Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, social media and/or published notice.

64.   **Commonality.**  Common questions of law and fact exist as to all Class Members. These common questions of law or fact predominate over any questions affecting only individual members of the Class.  Common questions include, but are not limited to the following:

    a.   Whether Plaintiff and Class Members had a reasonable expectation of privacy in their sensitive health information communicated to their healthcare providers;

    b.   Whether Defendant violated Plaintiff's and Class Members' privacy rights;

    c.   Whether Defendant intentionally tapped the lines of internet communication between Plaintiff and Class Members and their medical providers;

    d.   Whether Defendant's Website surreptitiously recorded personally identifiable information, protected health information and related communications and simultaneously, or subsequently, disclosed that information to Facebook.

    e.   Whether Facebook is a third-party eavesdropper;

17

f.    Whether Defendant's disclosure of personally identifiable information, protected health information and related communications constituted an affirmative act of communication;

g.    Whether Defendant's actions violated the FSCA; and

h.    Whether Plaintiff and Class Members are entitled to damages under the FSCA.

65.    **Typicality.**  Plaintiff's claims are typical of the claims of the Class he seeks to represent because Plaintiff and all Class Members have suffered similar injuries as a result of the same practices alleged herein.  Plaintiff has no interests to advance adverse to the interests of the other Class Members, and Defendant has no defenses unique to Plaintiff.

66.    **Adequate Representation.**  Plaintiff has and will continue to fairly and adequately represent and protect the interests of the Class and has retained as his counsel attorneys competent and experienced in class actions and complex litigation, including litigation to remedy privacy violations.  Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of Class Members, and they have the resources to do so.

67.    **Predominance.**  Common questions of law and fact predominate over any questions affecting only individual class members.  For example, Defendant's liability and the fact of damages is common to all members of the Class.

68.    **Superiority and Manageability.**  A class action is superior to other available means for the fair and efficient adjudication of this dispute.  The injury suffered by each Class Member, while meaningful on an individual basis, may not be of such magnitude as to make the prosecution of individual actions against Defendant economically feasible.  Even if Class Members could afford individual litigation, those actions would put immeasurable strain on the court system.  Moreover, individual litigation of the legal and factual issues of the case would increase the delay

and expense to all parties and the court system.   A class action, however, presents far fewer management difficulties and provides the benefit of single adjudication, economy of scale and comprehensive supervision by a single court.

## CLAIMS FOR RELIEF

## COUNT I
### Violation of the Florida Security of Communications Act
### Fla. Stat. 934.01, *et seq.*

69.     Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

70.     Plaintiff brings this Count individually and on behalf of the members of the Class.

71.     The Florida Security of Communications Act ("FSCA") prohibits: (1) the interception or procurement of another to intercept any wire, oral or electronic communication; (2) the intentional disclosure of the contents of any wire, oral or electronic communication that the discloser knew or should have known was obtained through the interception of a wire, oral or electronic communication; and (3) the intentional use of the contents of any wire, oral or electronic communication that the discloser knew or should have known was obtained through the interception of a wire, oral or electronic communication.   Fla. Stat. 934.03(1).

72.     Any person who intercepts, discloses or uses or procures any other person to intercept, disclose or use, a wire, oral or electronic communication in violation of the FSCA is subject to a civil action for: (1) actual damages, not less than liquidated damages computed at a rate of $100 per day for each violation or $1,000, whichever is higher; (2) punitive damages; and (3) reasonable attorneys' fees and other litigation costs incurred.   Fla. Stat. 934.10.

73.     At all relevant times, Defendant procured Facebook to contemporaneously track and intercept Plaintiff's and Class Members' internet communications while navigating the

Website.  Defendant procured Facebook to contemporaneously intercept these communications without authorization and consent from Plaintiff and Class members.

74.    Defendant, when procuring Facebook to intercept Plaintiff's and Class Members' communications, intended Facebook to contemporaneously learn the meaning of the content of Plaintiff's and Class Members' communications with Defendant.

75.    Plaintiff and Class Members had a justified and reasonable expectation under the circumstances that their electronic communications would not be intercepted.

76.    Plaintiff and Class Members were not aware that their electronic communications were being intercepted by Facebook and did not consent to the interception.

77.    In connection with procuring Facebook's contemporaneous interception of Plaintiff's and Class Members' communications with Defendant, Defendant embedded the Facebook Tracking Pixel on the Website.

78.    The Facebook Tracking Pixel constitutes an electronic or other device through which the contents of a wire, oral and electronic communication can be acquired, including the contents of Plaintiff's and Class Members' communications with Defendant via the Website.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a.    Determining that this action is a proper class action;

b.    For an order certifying the Class, naming Plaintiff as representative of the Class, and naming Plaintiff's attorneys as Class Counsel to represent the Class;

c.    For an order declaring that Defendant's conduct violates the statute referenced herein;

d.      For an order finding in favor of Plaintiff and the Class on the count asserted
herein;

e.      Awarding compensatory damages, including statutory damages where available,
to Plaintiff and Class Members against Defendant for all damages sustained as a
result of Defendant's wrongdoing, in an amount to be proven at trial;

f.      For punitive damages, as warranted, in an amount to be determined at trial;

g.      Ordering Defendant to disgorge revenues and profits wrongfully obtained;

h.      For prejudgment interest on all amounts awarded;

i.      For injunctive relief as pleaded or as the Court may deem proper;

j.      For an order awarding Plaintiff and the Class their reasonable attorneys' fees and
expenses and costs of suit; and

k.      Granting Plaintiff and Class Members such further relief as the Court deems
appropriate.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all claims so triable in this action.


Dated:  January 27, 2023                    Respectfully submitted,

                                            By: */s/ Christopher R. Reilly*
                                                Christopher R. Reilly

                                            **BURSOR & FISHER, P.A.**
                                            Christopher R. Reilly (FBN: 1025097)
                                            701 Brickell Avenue, Suite 1420
                                            Miami, FL 33133
                                            Telephone: (305) 330-5512
                                            Facsimile: (305) 679-9006
                                            Email:  creilly@bursor.com

                                            **BURSOR & FISHER, P.A.**
                                            Joshua D. Arisohn*
                                            Philip L. Fraietta*
                                            888 Seventh Avenue
                                            New York, NY 10019
                                            Tel: (646) 837-7150

21

Fax: (212) 989-9163
E-Mail: jarisohn@bursor.com
        pfraietta@bursor.com

**DRURY LEGAL, LLC**
Scott R. Drury*
6 Carriage Lane
Highwood, Illinois 60040
Telephone: (312) 358-8225
E-Mail: scott@drurylegal.com

*Pro Hac Vice Application Forthcoming*

*Attorneys for Plaintiff and the Putative Class*

22

**IN THE CIRCUIT/COUNTY COURT OF THE THIRTEENTH JUDICIAL CIRCUIT,**
**IN AND FOR HILLSBOROUGH COUNTY, FLORIDA**

COLIN CARLSEN                                                    Case Number: _____

_____                   Division:      _____

Plaintiff(s)/Petitioner(s)

vs

FLORIDA HEALTH SCIENCES CENTER, INC.,

d/b/a TAMPA GENERAL HOSPITAL

Defendant(s)/Respondent(s)

**REQUEST FOR DIVISION ASSIGNMENT**

This is a request based on local Administrative Order(s) for the Clerk of the Court to assign the above styled case in the:

☑ Tampa Division

☐ East Division (check all that apply):

    ☐ The Defendant resides within the East Division boundaries;

    ☐ The cause of action occurred within the East Division boundaries;

    ☐ The property in litigation is located within the East Division boundaries

☐ Prior Division (Please indicate Case Number and Division of previously filed action: _____ )

I understand that the actual division assignment will be in accordance with the Hillsborough County Administrative Orders.   If there is no supported request for specific division assignment, this action will be assigned a division based on a random and equitable distribution system.

Name of Attorney: Christopher R. Reilly

Address: 701 Brickell Ave, Ste 1420

Miami FL 33131

Phone Number: (305) 330-5512

Email Address(es): creilly@bursor.com

**IN THE CIRCUIT/COUNTY COURT OF THE THIRTEENTH JUDICIAL CIRCUIT,**
**IN AND FOR HILLSBOROUGH COUNTY, FLORIDA**

COLIN CARLSEN _____

_____
Plaintiff(s)

vs

FLORIDA HEALTHSCIENCES CENTER, INC.,

d/b/a TAMPA GENERAL HOSPITAL
Defendant(s)

Case Number: 23-CA-000810 _____

Division: CIVIL _____

**SUMMONS**

**THE STATE OF FLORIDA**:
To Each Sheriff of the State:

      **YOU ARE COMMANDED** to serve this summons and a copy of the complaint or petition in this action on defendant(s) FLORIDA HEALTHSCIENCES CENTER,INC.d/b/aTAMPA GENERAL HOSPITAL

      Each defendant is required to serve written defenses to the complaint or petition on _____ plaintiff's attorney, whose address is 701 BRICKELL AVE, SUITE 1420 MIAMI, FL 33131-2800 _____, within 20[1] days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court either before service on plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

**DATED** on _____

Attorney: CHRISTOPHER R. REILLY _____

Attorney For: COLIN CARLSEN _____

Address: 701 BRICKELL AVE, _____

SUITE 1420 _____

MIAMI, FL 33131-2800 _____

Florida Bar Number: 1025097 _____

CINDY STUART
As Clerk of the Court

By: _____

As Deputy Clerk      800 E. Twiggs St.
P.O. Box 3360       Room 101
Tampa, FL 33601     Tampa, FL 33602

[1] Except when suit is brought pursuant to section 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to be inserted as to it is 40 days. When suit is brought pursuant to section 768.28, Florida Statutes, the time to be inserted is 30 days.

Florida Rules of Civil Procedure Form 1.902(a) (Revised 02/18/2021)        Page 1 of 3

**IMPORTANT**

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the court you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named in the documents.

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator, Hillsborough County Courthouse, 800 E. Twiggs St., Room 604, Tampa, Florida 33602, (813) 272-7040, at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.**

**IMPORTANTE**

Usted ha sido demandado legalmente. Tiene 20 días, contados a partir del recibo de esta notificación, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefónica no lo protegerá. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el número del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podría ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guía telefónica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

**Si usted es una persona minusválida que necesita algún acomodamiento para poder participar en este procedimiento, usted tiene derecho, sin tener gastos propios, a que se le provea cierta ayuda. Tenga la amabilidad de ponerse en contacto con el Coordinador de ADA, Hillsborough County Courthouse, 800 E. Twiggs St., Sala 604, Tampa, Florida 33602, (813) 272-7040, por lo menos 7 días antes de la cita fijada para su comparecencia en los tribunales, o inmediatamente después de recibir esta notificación si el tiempo antes de la comparecencia que se ha programado es menos de 7 días; si usted tiene discapacitación del oído o de la voz, llame al 711.**

## IMPORTANT

Des poursuites judiciares ont ete entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insuffisant pour vous proteger. Vous etes obliges de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

**Si vous êtes une personne handicapée qui a besoin de mesures d'adaptation pour participer à cette procédure, vous avez droit, sans frais pour vous, à une certaine assistance. Veuillez contacter le coordinateur de l'ADA Hillsborough County Courthouse, 800 E. Twiggs St., Salle 604, Tampa, Florida 33602, (813) 272-7040 au moins 7 jours avant votre comparution prévue au tribunal, ou immédiatement après avoir reçu cette notification si le délai avant la comparution prevue est inférieur à 7 jours; si vous êtes malentendant ou avez un trouble de la parole, appelez le 711.**

## Enpòtan

Pwosedi legal yo te pran kont ou. Ou gen 20 jou konsekitif ki soti nan dat konklizyon sa a pou ou ranpli yon repons alekri pou plent sa a nan tribinal sa a. Yon apel telefon ki senp se pa ase pou pwoteje ou. Ou oblije ranpli repons alekri ou a, ak nimewo a dosye pi wo a ak non pati yo ki te nonmen isit la, si ou vle tribinal la tande ka w la. Si ou pa ranpli repons alekri ou nan rele egzije a, ou riske pedi koz la ak sale ou, lajan ou, ak pwopriyete ou yo ka mete men sou pita, san okenn lot avi nan tribinal la. Gen lot obligasyon legal epi ou ka mande sevis imedya yon avoka. Si ou pa konnen yon avoka, ou ka rele yon sèvis referans avoka oswa yon biwo ed legal (ki nan lis nan anye telefon).

Si ou chwazi pou ou soumet yon repons alekri tet ou, ou pral bezwen tou voye oswa voye yon kopi repons ekri ou nan fòm sa a an menm tan an tankou fomalite sa a "Avoka Pleyan/Pwokire a" (Pleyan oswa avoka li) non anba a.

**Si ou se yon moun ki enfim ki bezwen akomodasyon pou w kab patisipe nan pwosedi sa a, ou gen dwa, san ou pa bezwen peye okenn lajan, pou w jwenn yon sèten èd. Tanpri kontakte Hillsborough County Courthouse, 800 E. Twiggs St., Sal 604, Tampa, Florida 33602, (813) 272-7040, Kòdonatris pwogram Lwa Ameriken pou Moun ki Enfim yo nan Hillsborough County Courthouse, 800 E. Twiggs St., Sal 604, Tampa, Florida 33602, (813) 272-7040, fè sa omwen 7 jou anvan dat ou gen randevou pou parèt nan Tribinal la, oswa fè sa imedyatman apre ou fin resevwa konvokasyon an si dat ou gen pou w parèt nan tribinal la mwens pase 7 jou; si ou gen pwoblèm pou w tande byen oswa pou w pale klè, rele 711.**

Florida Rules of Civil Procedure Form 1.902(a) (Revised 02/18/2021)        Page 3 of 3

IN THE CIRCUIT/COUNTY COURT OF THE THIRTEENTH JUDICIAL
CIRCUIT, IN AND FOR HILLSBOROUGH COUNTY, FLORIDA

COLIN CARLSEN

      Plaintiffs,

v.                                      Case Number: 23-CA-000810
                                      Division D

FLORIDA HEALTH SCIENCES CENTER, INC.

      Defendants.

_____

**DIFFERENTIATED CASE MANAGEMENT ORDER &**

**NOTICE OF CASE MANAGEMENT HEARING**

**ON 9/8/2023 AT 10:30 AM**

**(GENERAL CIRCUIT CIVIL CASES FILED AFTER APRIL 30, 2021)**

      THIS CAUSE comes before the Court on review of Amendment 12 to Florida Supreme Court Administrative Order AOSC20-23 (the "**Supreme Court Order**").  The Supreme Court Order directs the chief judge of each circuit to issue an administrative order requiring the presiding judge for each civil case to actively manage civil cases in accordance with a differentiated case management process.  Consistent with this requirement, the Chief Judge of the Thirteenth Judicial Circuit issued Administrative Order S-2021-060 (the "**Case Management Plan**") on April 26, 2021.

      Accordingly, it is now

      **FOUND, ORDERED,** and **ADJUDGED** that:

1.  **Designation of Case.**  This case is preliminarily designated as a *General* civil case, as defined by the Supreme Court Order and the Case Management Plan.

2.  **Plaintiff's Obligation to Serve DCM Order on All Defendants.**  Consistent with the Case Management Plan, this Differentiated Case Management Order & Notice of Hearing (the "**DCM Order**") has been generated automatically upon the filing of the complaint and will be provided to Plaintiff along with the summons.  Plaintiff is **DIRECTED** to serve the DCM Order on each and every named defendant in the same manner and at the same time as the complaint itself is served.

3.  **Conformity with Supreme Court Order's Directive.**  The deadlines established in this DCM Order are set in conformity with the Supreme Court Order's directive that General civil cases be managed according to the time standards specified in Florida Rule of General Practice and Judicial Administration 2.250(a)(1)(B).

4.  **Procedure for Modification of Deadlines.**  Counsel or any self-represented parties, or both, may seek to modify the deadlines set forth in this order by either:

    a.  Filing a motion and setting it for hearing; or

    b.  Stipulating to new deadlines and submitting an Amended Differentiated Case Management Order.  The Amended Differentiated Case Management Order ("**Amended DCM Order**") form is available under the "Forms" tab of the undersigned's page at http://www.fljud13.org.  The Amended DCM Order must include a date for a court-ordered case management conference (the "**Court-Ordered Case Management Conference**").  Hearing time for the Court-Ordered Case Management Conference should be secured on either a Uniform Motion Calendar ("**UMC**") docket or a 15-minute hearing docket.

5.  **Procedure for Setting Firm Trial Date When Case is at Issue.**  Consistent with the Supreme Court Order's mandate, the deadlines set forth in this DCM Order contemplate a projected trial date within the time standards specified in Florida Rule of General Practice and Judicial Administration 2.250(a)(1)(B).  A firm trial date will be set through entry of a Uniform Order Setting Trial & Pretrial at the Court-Ordered Case Management Conference or as otherwise provided in this order.

6.  **Court-Ordered Case Management Conference.**  It is appropriate to set a Court-Ordered Case Management Conference prior to the close of fact discovery to both assess the progress of the case and set a firm trial date.

    a.  **Date and Time for Court-Ordered Case Management Set Below.**  A date and time for the Court-Ordered Case Management Conference is set below.

    b.  **Method of Conducting Court-Ordered Case Management Conference:**  The Court-Ordered Case Management Conference will be conducted remotely through the use of the following technology and connection instructions:

        The Court's Zoom link is https://zoom.us/j/3058068636 and Zoom Meeting ID is 305-806-8636.  No additional password is required for attendance.

    c.  **Attendance Mandated.**  Counsel and any self-represented parties **MUST ATTEND** unless otherwise excused by the Court and must be prepared to discuss selection of a firm trial date and corresponding pretrial conference date and time.

d. **Process for Securing Excusal from Attending the Court-Ordered Case Management Conference:**

   i. **Automatic Excusal.**

      1. Unless otherwise ordered by the presiding judge, counsel or any self-represented parties, or both, are automatically excused from attending the Court-Ordered Case Management Conference if a Uniform Order Setting Trial & Pretrial (Revised April 30, 2021) has been submitted to and signed by the Court at least 30 days before the date of the Court-Ordered Case Management Conference; and

      2. Any party seeking to invoke this automatic excusal provision should notify the judicial assistant by email sent to the division email address within 3 business days of the date the Uniform Order Setting Trial & Pretrial (Revised April 30, 2021) is signed.

   ii. **Discretionary Excusal.**

      1. Counsel or self-represented parties, or both, may seek a discretionary excusal from the Court-Ordered Case Management Conference by filing a motion and submitting an agreed proposed order excusing attendance by the Court on one of the following grounds:

         a. The Court has signed an Amended DCM Order, either by stipulation or by filing a motion and setting a hearing, <u>AND</u> the Amended DCM Order sets a new Court-Ordered Case Management Conference; or

         b. Counsel has otherwise demonstrated good cause to believe that the case is otherwise in full compliance with the Supreme Court Order's mandate and the Case Management Plan.

e. **Failure to Attend Court-Ordered Case Management Conference.** The failure to attend the Court-Ordered Case Management Conference may result in the case being set for a trial date without input of the absent counsel or self-represented party, or both; dismissal of the complaint without prejudice; entry of a judicial default; monetary sanctions against counsel or any self-represented parties, or both; or any other sanctions deemed appropriate by the presiding judge.

7. **Firm Trial Date to be Set by Uniform Order Setting Trial & Pretrial (Revised April 30, 2021).** Once a firm trial date is selected, counsel will be directed to prepare and submit through the Florida E-Portal (the "**Portal**") a Uniform Order Setting Trial &

Pretrial (Revised April 30, 2021), which is available under the "Forms" tab of the undersigned's page at http://www.fljud13.org.  The Uniform Order Setting Trial & Pretrial (Revised April 30, 2021) will require calculation of additional deadlines in a specified manner.

8. **Requirement to Review and Comply with Administrative Order for Circuit Civil Division.**  Counsel and any self-represented parties are **DIRECTED** to review and comply with all provisions of the Thirteenth Circuit's Administrative Order S-2021-014 (*Circuit Civil Division*), and any successive administrative order.

9. **Certificate of Conferral for Non-Dispositive Motions.**

   a. **When Required.**  Except for a motion (i) for injunctive relief; (ii) for judgment on the pleadings; (iii) for summary judgment; (iv) to dismiss or to permit maintenance of a class action; (v) to dismiss for failure to state a claim upon which relief can be granted; or (vi) to involuntarily dismiss an action, before the moving party or moving party's counsel files any other motion, the party or counsel should confer with the opposing party or opposing counsel in a good faith effort to resolve the issues raised by the motion. The moving party or moving party's counsel should include in the body of the motion a statement certifying that the moving party or moving party's counsel has conferred with the opposing party or opposing party's counsel—either in person, by telephone, or by video conferencing device—and stating whether the party or counsel agree on the resolution of the motion. A certification to the effect that opposing party or opposing party's counsel was unavailable for a conference before filing a motion should describe, with particularity, all of the efforts undertaken to accomplish dialogue with the opposing party or opposing party's counsel prior to filing the subject motion.

   b. **Cancelation of Hearing/Denial of Motion Filed Without Certificate of Conferral.**  Counsel and any self-represented parties should anticipate that a hearing set on a motion that lacks such a certification will be canceled and the motion may be denied without a hearing for failure to comply with this requirement.

   c. **Form of Certificate of Conferral.**  The certificate of conferral should be substantially in the following form:

   <u>Certificate of Conferral Prior to Filing</u>

   *"I certify that prior to filing this motion, I attempted to resolve the matter by discussing the relief requested in this motion by <u>[date and method of communication (select one of the following:  in person, telephone, or video conference)]</u> with the opposing party or counsel and <u>[the opposing party or counsel did not agree to that the motion could be resolved without the necessity of a hearing] OR [the opposing party or counsel did not respond and (describe with</u>*

*particularity all of the efforts undertaken to accomplish dialogue with the opposing party or opposing party's counsel prior to filing the motion)].*"

10. **Discovery Provisions.**

    a. **Fact Discovery.**

        i. All discovery must be served in time for a timely response to be received prior to the deadline for completion of fact discovery.

        ii. All non-expert witness depositions must occur prior to the deadline for completion of fact discovery.

        iii. Failure to timely complete discovery by the deadline for completion of fact discovery may result in, among other things, exclusion of evidence or other sanctions, or both.

    b. **Expert Discovery.**

        i. Expert disclosure must occur by the deadline indicated below.

        ii. Contemporaneous with disclosure of each expert, the disclosing party must provide to all other parties:

            1. No less than five proposed deposition dates, all of which must be prior to the deadline to complete expert discovery; and

            2. For each expert:

                a. Identify the expert's area of expertise;

                b. Identify the subject matter on which the expert is expected to testify;

                c. Summarize the substance of the facts and opinions to which the expert is expected to testify; and

                d. Summarize the grounds for each opinion.

        iii. The court may preclude an expert from testifying outside of the disclosed opinions.

        iv. All expert witness depositions must be conducted prior to the deadline for completion of expert discovery.

  v. It is the responsibility of counsel to select experts who:

    1. Are prepared to make themselves available for deposition within the expert discovery period; and

    2. Are prepared to respond promptly to requests for deposition dates.

  vi. If an expert cannot be deposed prior to the deadline for completion of expert discovery despite timely and reasonable efforts of opposing counsel to secure deposition dates, that expert's testimony may be excluded at trial.

11. **Deadlines.** The deadlines set forth below are **ESTABLISHED** and will **GOVERN** this case and will be strictly enforced by the Court. Counsel and any self-represented parties are **DIRECTED** to review, calendar, and abide by them:

| Action or Event | Date |
|---|---|
| **Complaint filing date.** | 01/27/2023 |
| **Deadline for service of complaint.**<br>[120 days after filing of complaint; *see* Rule 1.070(j), Fla. R. Civ. P.] | 5/30/2023 |
| **Deadline for adding parties.**<br>[150 days after filing of complaint; subject to Rule 1.210, Fla. R. Civ. P.] | 6/26/2023 |
| **Deadline for service under extensions.**<br>[180 days after filing of complaint; *see* Rule 1.070(j), Fla. R. Civ. P.] | 7/26/2023 |
| **Court-Ordered Case Management Conference.**<br>NOTE:  This hearing will be conducted remotely.  Please see paragraph 6(b) for connection instructions.<br>[210 days after filing of complaint.] | 09/08/2023<br>At<br>10:30 AM |
| **Deadline for completion of fact discovery.**<br>[270 days after filing of complaint.] | 10/24/2023 |
| **Deadline for filing motion to compel  discovery.**<br>[284 days after filing of complaint.] | 11/7/2023 |

| | |
|---|---|
| **Plaintiff's expert disclosure deadline.**<br><br>[300 days after filing of complaint.] | 11/27/2023 |
| **Defendant's expert disclosure deadline.**<br><br>[330 days after filing of complaint.] | 12/27/2023 |
| **Rebuttal expert disclosure deadline.**<br><br>[344 days after filing of complaint.] | 1/8/2024 |
| **Deadline for completion of compulsory medical exam, if applicable and requested ("CME").**<br><br>[390 days after filing of complaint; subject to Rule 1.360(1)(A), Fla. R. Civ. P.] | 2/21/2024 |
| **Deadline for completion of mediation or non-binding arbitration.**<br><br>[420 days after filing of complaint.] | 3/22/2024 |
| **Deadline for completion of expert discovery.**<br><br>[420 days after filing of complaint.] | 3/22/2024 |
| **Month and year of the projected trial term.**<br><br>[540 days after filing of complaint; *see* Florida Rule of General Practice and Judicial Administration 2.250(a)(1)(B); firm trial date will be set by entry of a Uniform Order Setting Trial & Pretrial (Revised April 30, 2021).] | July, 2024 |

ENTERED by the undersigned judge on the date imprinted below.

23-CA-000810 1/31/2023 4:26:53 PM

**Circuit Judge**

23-CA-000810 1/31/2023 4:26:53 PM

## IN THE CIRCUIT/COUNTY COURT OF THE THIRTEENTH JUDICIAL CIRCUIT,
## IN AND FOR HILLSBOROUGH COUNTY, FLORIDA

COLIN CARLSEN

Case Number: 23-CA-000810

Division: CIVIL **DIV D**

Plaintiff(s)

vs

FLORIDA HEALTHSCIENCES CENTER, INC.,

d/b/a TAMPA GENERAL HOSPITAL

Defendant(s)

### SUMMONS

**THE STATE OF FLORIDA**:

To Each Sheriff of the State:

      **YOU ARE COMMANDED** to serve this summons and a copy of the complaint or petition in this action on defendant(s) FLORIDA HEALTHSCIENCES CENTER,INC.d/b/aTAMPA GENERAL HOSPITAL

      Each defendant is required to serve written defenses to the complaint or petition on plaintiff's attorney, whose address is 701 BRICKELL AVE, SUITE 1420 MIAMI, FL 33131-2800, within 20[1] days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court either before service on plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

**DATED** on    01/31/2023

Attorney: CHRISTOPHER R. REILLY

Attorney For: COLIN CARLSEN

Address: 701 BRICKELL AVE,

SUITE 1420

MIAMI, FL 33131-2800

Florida Bar Number: 1025097

**CINDY STUART**
As Clerk of the Court

By: *V Phillips*

As Deputy Clerk

P.O. Box 3360      800 E. Twiggs St.
Tampa, FL 33601    Room 101
                   Tampa, FL 33602

[1] Except when suit is brought pursuant to section 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to be inserted as to it is 40 days. When suit is brought pursuant to section 768.28, Florida Statutes, the time to be inserted is 30 days.

Florida Rules of Civil Procedure Form 1.902(a) (Revised 02/18/2021)          Page 1 of 3

## IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the court you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named in the documents.

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator, Hillsborough County Courthouse, 800 E. Twiggs St., Room 604, Tampa, Florida 33602, (813) 272-7040, at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.**

## IMPORTANTE

Usted ha sido demandado legalmente. Tiene 20 días, contados a partir del recibo de esta notificación, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefónica no lo protegerá. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el número del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podría ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guía telefónica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

**Si usted es una persona minusválida que necesita algún acomodamiento para poder participar en este procedimiento, usted tiene derecho, sin tener gastos propios, a que se le provea cierta ayuda. Tenga la amabilidad de ponerse en contacto con el Coordinador de ADA, Hillsborough County Courthouse, 800 E. Twiggs St., Sala 604, Tampa, Florida 33602, (813) 272-7040, por lo menos 7 días antes de la cita fijada para su comparecencia en los tribunales, o inmediatamente después de recibir esta notificación si el tiempo antes de la comparecencia que se ha programado es menos de 7 días; si usted tiene discapacitación del oído o de la voz, llame al 711.**

**IMPORTANT**

Des poursuites judiciares ont ete entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insuffisant pour vous proteger. Vous etes obliges de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

**Si vous êtes une personne handicapée qui a besoin de mesures d'adaptation pour participer à cette procédure, vous avez droit, sans frais pour vous, à une certaine assistance. Veuillez contacter le coordinateur de l'ADA Hillsborough County Courthouse, 800 E. Twiggs St., Salle 604, Tampa, Florida 33602, (813) 272-7040 au moins 7 jours avant votre comparution prévue au tribunal, ou immédiatement après avoir reçu cette notification si le délai avant la comparution prevue est inférieur à 7 jours; si vous êtes malentendant ou avez un trouble de la parole, appelez le 711.**

**Enpòtan**

Pwosedi legal yo te pran kont ou. Ou gen 20 jou konsekitif ki soti nan dat konklizyon sa a pou ou ranpli yon repons alekri pou plent sa a nan tribinal sa a. Yon apel telefon ki senp se pa ase pou pwoteje ou. Ou oblije ranpli repons alekri ou a, ak nimewo a dosye pi wo a ak non pati yo ki te nonmen isit la, si ou vle tribinal la tande ka w la. Si ou pa ranpli repons alekri ou nan rele egzije a, ou riske pedi koz la ak sale ou, lajan ou, ak pwopriyete ou yo ka mete men sou pita, san okenn lot avi nan tribinal la. Gen lot obligasyon legal epi ou ka mande sevis imedya yon avoka. Si ou pa konnen yon avoka, ou ka rele yon sèvis referans avoka oswa yon biwo ed legal (ki nan lis nan anye telefon).

Si ou chwazi pou ou soumet yon repons alekri tet ou, ou pral bezwen tou voye oswa voye yon kopi repons ekri ou nan fòm sa a an menm tan an tankou fomalite sa a "Avoka Pleyan/Pwokire a" (Pleyan oswa avoka li) non anba a.

**Si ou se yon moun ki enfim ki bezwen akomodasyon pou w kab patisipe nan pwosedi sa a, ou gen dwa, san ou pa bezwen peye okenn lajan, pou w jwenn yon sèten èd. Tanpri kontakte Hillsborough County Courthouse, 800 E. Twiggs St., Sal 604, Tampa, Florida 33602, (813) 272-7040, Kòdonatris pwogram Lwa Ameriken pou Moun ki Enfim yo nan Hillsborough County Courthouse, 800 E. Twiggs St., Sal 604, Tampa, Florida 33602, (813) 272-7040, fè sa omwen 7 jou anvan dat ou gen randevou pou parèt nan Tribinal la, oswa fè sa imedyatman apre ou fin resevwa konvokasyon an si dat ou gen pou w parèt nan tribinal la mwens pase 7 jou; si ou gen pwoblèm pou w tande byen oswa pou w pale klè, rele 711.**

Florida Rules of Civil Procedure Form 1.902(a) (Revised 02/18/2021)          Page 3 of 3

IN THE CIRCUIT COURT OF THE THRITEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

COLIN CARLSEN,

        Plaintiff,

vs.                                    CASE NO. 23-CA-000810
                                       DIVISION: D

FLORIDA HEALTH SCIENCES CENTER, INC.
d/b/a TAMPA GENERAL HOSPITAL,

        Defendant.

_____/

**NOTICE OF APPEARANCE AND DESIGNATION OF EMAIL ADDRESSES**

      CARLTON FIELDS, P.A. enters its appearance as counsel for the Defendant, and requests

that it receive copies of all future notices, pleadings, and orders served or filed in the above-

referenced matter. Pursuant to Rule 2.516 Florida Rules of Judicial Administration, CARLTON

FIELDS, P.A. hereby designates the following addresses for e-service:

                    **Jon T. Gatto, Esq.**
                    E-Mail: jgatto@carltonfields.com
                    E-Mail: lgrodriguez@carltonfields.com
                    E-Mail: plowden@carltonfields.com

                    **D. Matthew Allen, Esq.**
                    E-Mail: mallen@carltonfields.com
                    E-Mail: bwoolard@carltonfields.com

                    **Joseph W. Swanson, Esq.**
                    E-Mail: jswanson@carltonfields.com
                    E-Mail: nkapadia@carltonfields.com

                    **Austin M. Eason, Esq**.
                    E-Mail: aeason@carltonfields.com
                    E-Mail: lgrodriguez@carltonfields.com
                    E-Mail: plowden@carltonfields.com

132094322.1

Respectfully Submitted,

*/s/ Jon T. Gatto*
Jon T. Gatto
Florida Bar No: 547328
jgatto@carltonfields.com
D. Matthew Allen
Florida Bar No.: 866326
mallen@carltonfields.com
Joseph W. Swanson
Florida Bar No.: 29618
jswanson@carltonfields.com
Austin M. Eason
Florida Bar No.: 105102
aeason@carltonfields.com
**CARLTON FIELDS**
Post Office Box 3239
Tampa, Florida 33601-3239
Telephone: (813) 223-7000
Attorneys for Defendant

## <u>CERTIFICATE OF SERVICE</u>

**WE CERTIFY** that on this 20th day of February 2023, a true and correct copy of this

Notice of Appearance and Designation of Email Addresses was served on Plaintiff's counsel via

Electronic Mail through the Florida Courts' E-Filing System.

*/s/ Jon T. Gatto*
Jon T. Gatto

| Attorney or Party without Attorney:<br>CHRISTOPHER R. REILLY<br>BURSOR & FISHER, P.A.<br>701 BRICKELL AVENUE SUITE 1420<br>MIAMI, FL 33131<br>Telephone No:  305-330-5512 | | | | For Court Use Only |
|---|---|---|---|---|
| Attorney For:  Plaintiff | Ref. No. or File No.:<br>Carlsen v. Florida | | | |
| Insert name of Court, and Judicial District and Branch Court:<br>IN THE CIRCUIT/COUNTY COURT OF THE THIRTEENTH JUDICIAL CIRCUIT, IN AND FOR<br>HILLSBOROUGH COUNTY, FLORIDA | | | | |
| Plaintiff:  COLIN CARLSEN<br>Defendant:  FLORIDA HEALTHSCIENCES CENTER, INC., d/b/a TAMPA GENERAL<br>                     HOSPITAL | | | | |

| PROOF OF SERVICE | Hearing Date: | Time: | Dept/Div: | Case Number:<br>23-CA-000810 |
|---|---|---|---|---|

1.  *At the time of service I was at least 18 years of age and not a party to this action.*

2.  I served copies of the SUMMONS; COMPLAINT; CIVIL COVER SHEET

3.  a.  *Party served:*    FLORIDA HEALTHSCIENCES CENTER, INC., d/b/a TAMPA GENERAL HOSPITAL
    b.  *Person served:*   Meme Marjorie, Administrative Assistant, authorized to accept service

4.  *Address where the party was served:*   1 Davis Blvd Suite 401, Tampa, FL 33606

5.  *I served the party:*
    a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive
    process for the party (1) on: Mon, Feb 13 2023 (2) at: 11:00 AM

6.  **Person Who Served Papers:**
    a. William Dial
    b. FIRST LEGAL
       3600 Lime Street, Suite 626
       RIVERSIDE, CA 92501
    c. (888) 599-5039

    **d.** *The Fee for Service was:*

7.  *I declare under penalty of perjury that the foregoing is true and correct.*

2-15-23
(Date)

William R Dial
(Signature)



PROOF OF
SERVICE

8374243
(362643)



# Case Information

Icon Keys    Summary    Parties    Events    Hearings    Financial

File Location    Related Cases

Filter Events Dates:

From

To

Filter

Show 50 entries                                                Search:

| Select | Document Index | Clock-In Event Date | Event Description | Comment | Image | Certify |
|--------|----------------|---------------------|------------------|---------|-------|---------|
| | 10 | 03/09/2023 | PROOF OF SERVICE | MEME MARJORIE, ADMINISTRATIVE ASSISTANT- 02/13/2023 | | |
| | 9 | 02/20/2023 | NOTICE OF APPEARANCE | | | |
| | 6 | 01/31/2023 | REQUEST FOR SUMMONS TO BE ISSUED (E-Filed) | | | |
| | 7 | 01/31/2023 | General Differentiated Case Management Order | | | |
| | 8 | 01/31/2023 | E-FILED SUMMONS ISSUED | X1 | | |

Privacy - Terms

| Select | Document Index | Clock-In Event Date | Event Description | Comment | Image | Certify |
|---|---|---|---|---|---|---|
| | 1 | 01/27/2023 | File Home Location - Electronic | | | |
| | 2 | 01/27/2023 | General Differentiated Case Management Applies | | | |
| ⬇ | 3 | 01/27/2023 | CIVIL COVER SHEET | | 📄✓ | 🛒 |
| ⬇ | 4 | 01/27/2023 | COMPLAINT | | 📄✓ | 🛒 |
| ⬇ | 5 | 01/27/2023 | REQUEST FOR DIVISION ASSIGNMENT (E-FILING) | | 📄✓ | 🛒 |

Showing 1 to 10 of 10 entries (filtered from 0 total entries)

Previous | 1 | Next



If no Icons Appear under the Image Column, click here to order copies of documents

📄✓ Indicates document is ready to be viewed

⬇ Displays additional event information

🔄 Indicates document needs redaction review prior to public viewing

👷 Indicates document is undergoing redaction

📄❌ Indicates document is sealed by the Court Order or Confidential by Court rule. Image cannot be viewed

🛒 Click to purchase electronically certified copies of documents

📄 Image Pending Review

If No Image Appears there is either no image available or document has not been converted to electronic image.



   

© 2023- Hillsborough County Clerk of Court and Comptroller