UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**COLIN CARLSEN**, individually and
on behalf of all others similarly situated,

    Plaintiff,

v.                                                                   Case No. 8:23-cv-559-WFJ-JSS

**FLORIDA HEALTH SCIENCES
CENTER INC.**, d/b/a Tampa General
Hospital,

    Defendant.
_____/

## ORDER

Before the Court is Plaintiff Colin Carlsen's Motion for Voluntary Dismissal pursuant to Federal Rule of Civil Procedure 41(a)(2). Dkt. 13. Defendant Florida Health Sciences Center Inc., d/b/a Tampa General Hospital ("TGH"), has responded in opposition. Dkt. 15. Mr. Carlsen has not replied. Upon careful consideration, the Court denies Mr. Carlsen's Motion and declines to dismiss this case without prejudice.

## BACKGROUND

The instant putative class action arises from TGH's alleged disclosure of patient health information to Meta Platforms, Inc ("Meta"). Mr. Carlsen claims that TGH conspired with Meta to intercept data communications containing personally

identifiable information, protected health information, and related confidential information without consent or authorization. Dkt. 1-1 at 3. Mr. Carlsen brings this action individually and on behalf of "[a]ll natural persons in the State of Florida whose personal information was collected" through the data gathering process described below. *Id.* at 16.

## I.     The Alleged Data Gathering and Disclosure Scheme

Social media platforms earn a significant source of revenue from targeted advertising. Facebook, a social media platform owned by Meta, is no exception. Less clear, however, is how social media platforms like Facebook enable advertisers to effectively target their intended audiences.

Mr. Carlsen claims that Facebook does so by surveilling "user activity both on and off its site" to gather personal data. Dkt. 1-1 at 6. While on-site surveillance presumably involves Facebook gathering data from its own platform(s), off-site surveillance allegedly involves advertisers gathering data from their platforms and sharing it with Facebook by: (a) "manually uploading contact information for customers" or (b) "utilizing Facebook's 'Business Tools.'" *Id.* Mr. Carlsen's Complaint focuses on TGH's alleged use of the latter data sharing method.

Mr. Carlsen generally describes Facebook Business Tools as "bits of code that advertisers can integrate into their websites, mobile applications[,] and servers, thereby enabling Facebook to intercept and collect user activity on those platforms."

*Id.* at 7. Mr. Carlsen maintains that they "are automatically configured to capture certain data, like when a user visits a webpage, the webpage's Universal Resource Locator ("URL") and meta data, or when a user downloads a mobile application or makes a purchase." *Id.* Advertisers like TGH can allegedly "create their own tracking parameters" for Facebook Business Tools as well. *Id.*

According to Mr. Carlsen, TGH's website—www.tgh.org (the "Website")—is embedded with a Facebook Business Tool called the "Facebook Tracking Pixel." *Id.* at 9. Mr. Carlsen describes this digital tool and exemplifies its function as follows:

> When a user accesses a website hosting the Facebook Tracking Pixel, Facebook's software script surreptitiously directs the user's browser to send a separate message to Facebook's servers. This second, secret transmission contains the original GET request sent to the host website, along with additional data that the Facebook Tracking Pixel is configured to collect. This transmission is initiated by Facebook code and concurrent with the communications with the host website. Two sets of code are thus automatically run as part of the browser's attempt to load and read [the host's website]—[the host's] own code and Facebook's embedded code.
>
> An example illustrates the point. Take an individual who navigated to the Website and clicked on a tab for lung cancer. When that tab was clicked, the individual's browser sent a GET request to [TGH's] server requesting that server to load the particular webpage. Because the Facebook Tracking Pixel was embedded in the Website, Facebook's embedded code, written in JavaScript, sent secret instructions back to the individual's browser, without alerting the individual that this was happening. Facebook caused the browser to secretly and concurrently duplicate the communication with the Website, transmitting it to Facebook's servers, alongside additional information that transcribed the communication's content and the individual's identity.

*Id.* at 8.

This means that "whenever patients searched their treatment or condition [on the Website], or whenever patients scheduled an appointment [on the Website], [TGH] procured Facebook to intercept communications that contain protected health information." *Id.* at 12. And, "[e]ach time [TGH] sent this content, it also disclosed a patient's personally identifiable information[.]" *Id.* Mr. Carlsen claims that he, and all similarly situated potential class members, "never consented, agreed[,] or otherwise permitted [TGH] to disclose" such information. *Id.* at 13–14.

## II.    The Resulting State Court Action and Removal to Federal Court

On January 27, 2023, Mr. Carlsen brought a putative class action complaint against TGH in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida. *Id.* at 1. Mr. Carlsen's complaint alleges one count—violation of the Florida Security of Communications Act ("FSCA"), Fla. Stat. 934.01, *et seq. Id.* at 19. He seeks to represent "[a]ll natural persons in the State of Florida whose personal information was collected through the Facebook Tracking Pixel." *Id.* at 16.

On March 13, 2023, TGH removed Mr. Carlsen's case to this Court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C § 1332(d)(2). Dkt. 1 at 4. TGH moved to dismiss Mr. Carlsen's Complaint one week later. Dkt. 10. On March 27,

4

2023, however, only one week after filing its Motion to Dismiss, TGH answered Mr. Carlsen's Complaint and brought forth fifteen affirmative defenses. Dkt. 11.

The purpose of TGH's maneuvering became apparent in the following days when Mr. Carlsen filed the instant Motion for Voluntary Dismissal seeking a dismissal without prejudice. Dkt. 13. TGH filed its response in opposition on April 7, 2023. Dkt. 15. TGH avers that voluntary dismissal would allow Mr. Carlsen to deprive TGH of its substantial CAFA-based right of removal and defeat federal jurisdiction under CAFA by utilizing an otherwise impermissible means of post-removal complaint amendment. *Id.* at 12, 16. TGH also maintains that, "[i]f [Mr. Carlsen] were to succeed, it would fly in the face of Congress's express intent under CAFA to prevent plaintiffs from pleading their way out of federal court." *Id.* at 1.

## LEGAL STANDARD

Rule 41(a)(2) provides that—after a defendant serves an answer to a plaintiff's complaint—an "action may be dismissed at plaintiff's request only by court order." While district courts enjoy "broad discretion in determining whether to allow a voluntary dismissal[,]" *Pontenberg v. Bos. Sci. Corp.*, 252 F.3d 1253, 1255 (11th Cir. 2001), "in most cases[,] a dismissal should be granted unless the defendant will suffer clear legal prejudice, *other than the mere prospect of a subsequent lawsuit*, as a result." *McCants v. Ford Motor Co.*, 781 F.2d 855, 856–57 (11th Cir. 1986) (emphasis in original). Ultimately, "[a] court's task in ruling on a Rule 41(a)(2)

motion is to 'weigh the relevant equities and do justice between the parties.'" *Chishti v. Samuel Coraluzzo Co., Inc.*, No. 8:20-CV-2840-T-KKM-AEP, 2021 WL 2226588, at * 2 (M.D. Fla. June 2, 2021) (quoting *McCants*, 781 F.2d at 857).

## DISCUSSION

The instant dispute turns on whether CAFA indirectly requires the denial of Mr. Carlsen's Motion for Voluntary Dismissal where TGH removed Mr. Carlsen's action from state court under CAFA subject-matter jurisdiction. For the reasons explained below, the Court finds that it does.

It is important to reiterate at the outset that granting voluntary dismissal pursuant to Rule 41(a)(2) may be inappropriate where the defendant will suffer clear legal prejudice. *McCants*, 781 F.2d at 856–57. Although the prospect of a subsequent lawsuit does not qualify as clear legal prejudice, the loss of a "substantial right" does. *See Goodwin v. Reynolds*, 757 F.3d 1216, 1219 (11th Cir. 2014) (finding that voluntary dismissal "may be inappropriate" where it would "cause the defendant to lose a 'substantial right'"). The Court therefore begins by considering TGH's substantial rights.

TGH argues that, under CAFA, it has "substantial rights to remove this case to federal court, and to remain in federal court." Dkt. 15 at 12. The Court agrees at this juncture. As a preliminary matter, the Court recognizes that the Eleventh Circuit has declined to weigh in on "the substantiality of a defendant's right of removal" in

6

CAFA cases versus non-CAFA cases. *See Goodwin*, 757 F.3d at 1220. The Eleventh Circuit has nevertheless indicated that where "the removability of [a] case is based on the substance of the action[,]" a defendant's right to removal may be substantial. *Id.* Here, the removability of Mr. Carlsen's action is based on whether his substantive allegations give rise to federal jurisdiction under CAFA. It follows that, if jurisdiction exists, TGH's right to removal may be substantial.

> As the record stands, jurisdiction exists. CAFA provides that:
>
> the district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action [comprised of at least 100 class members] in which[:]
>
> (A) any member of a class of plaintiffs is a citizen of a State different from any defendant;
> (B) any member of a class of plaintiffs is a foreign state or citizen or subject of a foreign state and any defendant is a citizen of a State; or
> (C) any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state.

28 U.S.C. § 1332(d)(2)(A)–(C), (d)(5)(B). TGH has met its threshold burden of satisfying these requirements. *See* Dkt. 1 at 5–9. First, Mr. Carlsen "believes [his] Class contains at least hundreds of thousands of individuals[]," thereby meeting the numerosity requirement. Dkt. 1-1 at 17. Second, based on the affidavit of TGH's Executive Vice President Scott Arnold, at least one putative class member is a citizen of a state other than Florida. Dkt. 1 at 13. This satisfies CAFA's minimal diversity requirement. Third, damages could easily exceed over $100,000,000 where Mr.

Carlsen seeks up to $1,000 for each alleged FSCA violation for over 100,000 potential class members. Dkt. 1-1 at 19. The amount in controversy requirement is consequently satisfied as well. Given this, the Court is confident that Mr. Carlsen's case meets the preliminary federal jurisdictional requirements for CAFA removal. *See Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1062 (11th Cir. 2010) (finding that "courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements").

The possible applicability of a CAFA jurisdictional exception does not change the Court's analysis at this stage. While the Court "shall decline" to exercise CAFA jurisdiction over a minimal diversity class action in which "greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed[,]" § 1332(d)(4)(A)(i)(I), the record is wholly undeveloped on this point. Mr. Carlsen has not filed a motion for remand or otherwise attempted to show that any CAFA exception applies beyond simply suggesting as much in his Motion for Voluntary Dismissal. Accordingly, if the Court were to make a class composition determination based on the current record, it would functionally amount to an uninformed guess. What is more, a plaintiff bears the burden of establishing that his action falls within a CAFA exception that would allow for remand, not the Court. *See Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1164 (11th Cir. 2006) (finding that "plaintiffs bear the burden of establishing that

they fall within CAFA's local controversy exception"). Accordingly, the Court cannot negate TGH's removal rights at this point.

Noncontrolling caselaw also supports the notion that TGH currently possesses a substantial right to removal. In *Loper v. Lifeguard Ambulance Service, LLC*, a district court case in the Eleventh Circuit, the plaintiff brought a class action in state court, which the defendant removed to federal court under CAFA. No. 2:19-CV-583-CLM, 2020 WL 8617215, at *1–2 (N.D. Ala. Jan. 10, 2020). The plaintiff responded by filing both a motion for voluntary dismissal and a motion to remand arguing that the defendant failed to meet CAFA's jurisdictional requirements. *Id.* at 2. After oral argument, the court found that the defendant had met its threshold jurisdictional burden under the CAFA. *Id.* The Court then ordered limited discovery pertaining to CAFA's jurisdictional exceptions. *Id.* Discovery demonstrated that remand would be inappropriate under CAFA's jurisdictional exceptions for various reasons. *Id.* at 1. The court consequently found that the defendant would "lose a 'substantial right' and suffer 'clear legal prejudice' if the court granted [the plaintiff's] motion to voluntarily dismiss her complaint." *Id.* at 11.

In *Thatcher v. Hanover Insurance Group, Inc.*, an Eighth Circuit case, the plaintiff also brought a class action in state court, which the defendants removed to federal court under CAFA. 659 F.3d 1212, 1213 (8th Cir. 2011). When the plaintiff sought voluntary dismissal, the district court granted it. *Id.* On appeal, the defendant

9

argued that "the district court should have considered whether the motion to voluntarily dismiss was an improper forum-shopping measure." *Id.* The Eighth Circuit agreed based on circuit caselaw dictating that a district court must consider a plaintiff's purpose in seeking voluntary dismissal, as the district court "could have concluded that [the plaintiff] was dismissing so he could return to a more favorable state forum." *Id.* at 1214. The Eighth Circuit only did so, however, after recognizing that "the right to remove an action which falls within the jurisdiction of the federal courts is a substantial right." *Id.* (quoting *Jones v. Mosher,* 107 F. 561, 564 (8th Cir. 1901)).

The Court finds persuasive the foregoing cases' position on the substantiality of a defendant's right to removal. In both cases, the substantiality of the defendants' removal rights were ultimately viewed through the lens of whether the substance of the actions granted federal jurisdiction. *Id.* at 1215 (stating that "the determination of whether the motion to dismiss was an improper forum-shopping measure, by its very nature, called into question the trial court's subject matter jurisdiction"); *Loper*, 2020 WL 8617215, at *8–9 (finding that the defendant "possesse[d] a substantial, statutory right to have its case heard in federal court" after finding that the court had "jurisdiction over [the plaintiff's] complaint"). The Eleventh Circuit has suggested that this is the correct approach to take. *See Goodwin*, 757 F.3d at 1220. Thus, given

that jurisdiction currently exists here, the Court can only determine that TGH currently has a substantial right of removal under CAFA.

The Court now turns to whether TGH would lose this substantial right in the event that Mr. Carlsen were granted voluntary dismissal without prejudice. There is little doubt that TGH would. Much like the plaintiffs in *Loper* and *Thatcher*, Mr. Carlsen essentially admits that he seeks voluntary dismissal in order to replead his Complaint so as to defeat federal jurisdiction. Dkt. 13 at 9 (stating that his intention is to refile his case by combining it with another ongoing class action "with a refined class definition that will ensure exclusive state court jurisdiction"). The Court finds that granting voluntary dismissal would result in TGH irrevocably losing a substantial right. If Mr. Carlsen wishes to ensure exclusive state court jurisdiction, he must file a motion to remand and carry his burden of demonstrating a CAFA exception.

## CONCLUSION

After weighing the relevant equities, the Court finds that voluntary dismissal without prejudice is inappropriate. Mr. Carlsen may file for remand.

Accordingly, it is hereby **ORDERED** and **ADJUDGED**:

(1) Mr. Carlsen's Motion for Voluntary Dismissal (Dkt. 13) is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, on April 24, 2023.

*/s/ William F. Jung*
**WILLIAM F. JUNG**

                                            **UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record